1   PAUL J. BYRNE (State Bar No. 190860)
    JOHN C. BROWN (State Bar No. 195804)
2   **CORNERSTONE LAW GROUP**
    351 California Street, Suite 600
3   San Francisco, CA 94104
    Tel: (415) 357-2094
4   Fax: (415) 974-6433
    E-Mail:  pbyrne@cornerlaw.com
5   E-Mail:  jbrown@cornerlaw.com

6   Attorneys for Defendants
    VIRGIN AMERICA, INC, and
7   ALASKA AIR GROUP, INC.

8

9                               UNITED STATES DISTRICT COURT

10                            NORTHERN DISTRICT OF CALIFORNIA

11                                      OAKLAND DIVISION

12

13  JANE DOE,                              |  Case No.  4:18-CV-02420-DMR

14                         Plaintiff,      |  DEFENDANTS VIRGIN AMERICA, INC.
                                           |  AND ALASKA AIR GROUP, INC.'S NOTICE
15              vs.                        |  OF MOTION AND MOTION TO DISMISS
                                           |  PLAINTIFF'S COMPLAINT PURSUANT TO
16  VIRGIN AMERICA, INC, ALASKA AIR        |  F.R.C.P 12(B)(6)
    GROUP, INC. and STUART DINNIS,         |
17                                         |  Date: July 12, 2018
                         Defendants.       |  Time: 11:00 a.m.
18                                         |  Courtroom: 4 – 3rd Flr.
                                           |  Judge:  Hon. Donna M. Ryu
19

20

21  **TO ALL PARTIES AND THEIR ATTORENYS OF RECORD**:

22          **PLEASE TAKE NOTICE THAT** on July 12, 2018 at 11:00 a.m., or as soon thereafter as

23  the matter bay be heard, in Courtroom 4 of the United States District Court located at 1301 Clay

24  Street, Oakland, California 94612, Defendants Virgin America, Inc. and Alaska Air Group, Inc.

25  ("Airline Defendants") will and hereby do move for an order dismissing portions of Plaintiff Jane

26  Doe's ("Plaintiff") Complaint.

27          This motion is made pursuant to Federal Rule of Civil Procedure 12(b)(6) and based on the

28

1   grounds that the California statutory causes of actions under Government Code Section 12940(k) and

2   Civil Code Sections 51.7(a) and 52.1 along with the claims of Negligent and Intentional Infliction of

3   Emotional Distress, Assault and Battery fail to state a claim against the Airline Defendants upon

4   which relief may be granted.

5      This motion is based on this notice of motion, the memorandum of points and authorities, the

6   Complaint and all other pleadings and records on file in this action, and upon such other argument as

7   the Court may consider at the hearing on this motion.

8      **Relief Requested**:  By this motion, and for the reasons set forth herein, the Airline

9   Defendants request the Court dismiss Plaintiff's First, Second, Third, Fourth, Fifth, Sixth, Seventh

10  and Eighth causes of action with prejudice.

11

12  DATED:  June 7, 2018     CORNERSTONE LAW GROUP

13

14             /s/ Paul J. Byrne
           /s/ John C. Brown

15             PAUL J. BYRNE
           JOHN C. BROWN

16             Attorneys for Defendants
           VIRGIN AMERICA, INC. and ALASKA AIR GROUP,

17             INC.

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION                                                                          1

II.     RELEVANT ALLEGATIONS FROM THE COMPLAINT                                               2

III.    LEGAL ARGUMENT                                                                        5

     A.     Legal Standard for a 12(b)(6) Motion ........................................................................... 5

     B.     Plaintiff, a Texas Citizen, Cannot Claim Rights Under California
        Statutes Based on Alleged Wrongful Conduct in Canada. ........................................... 6

        (i)     Due Process Constrains California's Application of its Statutes ...................... 6

        (ii)    Courts Presume California Statutes Do Not Apply
            Extraterritorially ............................................................................................ 6

        (iii)   California's Conflict-of-Law Rules Also Prevent Application of
            the California Statutes in This Case .................................................................. 7

     C.     Even Assuming, *Arguendo,* Plaintiff Could Claim Rights Under
        California Statutes, the FEHA Claim Must Be Dismissed Because
        Plaintiff Failed to File an Administrative Complaint, and No Defendant
        Employed Plaintiff. ................................................................................................... 10

     D.     The Airline Defendants Cannot Be Vicariously Liable for Dinnis'
        Wrongful Conduct Directed at Plaintiff Because, as a Matter of Law,
        the Conduct Was Outside the Scope of Dinnis' Employment. ................................... 10

IV.     CONCLUSION                                                                            14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*ABF Capital Corp. v. Berglass*, 130 Cal.App.4th 825 (2005) ...................................... 8

*Angel v. Bullington*, 330 U.S. 183 (1947) .......................................................... 6

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ......................................................... 5

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir. 1990) ........................... 5

*Bernhard v. Harrah's Club*, 16 Cal.3d 313 (1976) ............................................... 8

*Browne v. McDonnell Douglas Corp.*, 504 F.Supp. 514 (1980) .............................. 8, 9

*Cable v. Sahara Tahoe Corp.*, 93 Cal.App.3d 384 (1979) ....................................... 8

*Camp v. Forwarders Transport, Inc.*, 537 F.Supp. 636 (1982) ............................... 8

*Campbell v. Arco Marine, Inc.*, 42 Cal.App.4th 1850 (1996) .................................. 6

*Commodore Home Systems, Inc. v. Sup.Ct. (Brown)*, 32 Cal.3d 211 (1982) ............. 10

*Daza v. Los Angeles Community College District*, 247 Cal.App.4th 260 (2016) .......... 12

*Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992 (1995) .................. 10, 11

*Hernandez v. Burger*, 102 Cal.App.3d 795 (1980) ............................................... 8, 9

*Hurtado v. Superior Court*, 11 Cal.3d 574 (1974) ............................................... 7, 9

*In re Aircrash in Bali, Indonesia*, 684 F.2d 1301 (9th Cir.1982) ............................ 8

*John Y. v. Chaparral Treatment Center, Inc.*, 101 Cal.App.4th 565 (2002) .............. 11

*Kasel v. Remington Arms Co.*, 24 Cal.App.3d 711 (1972) ..................................... 8

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941) ................................... 7

*Lauritzen v. Larsen*, 345 U.S. 571 (1953) ......................................................... 6

*Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291 (1995) .......... 12, 13

*Myers v. Trendwest Resorts, Inc.*, 148 Cal.App.4th 1403 (2007) ............................ 12

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214 (1999) .................... 6

*Offshore Rental Co. v. Continental Oil Co.*, 22 Cal. 3d 157 (1978) .......................... 7

*Okoli v. Lockheed Technical Operations Co.* 36 Cal.App.4th 1607 (1995) ................ 10

*Ryan v. Clark Equipment Co.*, 268 Cal.App.2d 679 (1969) ................................... 9

*Sullivan v. Oracle Corp.*, 51 Cal.4th 1191 (2011) ................................................................. 6

*Tucci v. Club Mediterranee*, 89 Cal.App.4th 180 (2001) ...................................................... 7

*Vasquez v. L.A. County*, 487 F.3d 1246 (9th Cir. 2007) ......................................................... 5

*Wong v. Tenneco, Inc.*, 39 Cal. 3d 126 (1985) ....................................................................... 9

**Statutes**

California Civil Code § 4 ........................................................................................................ 7

California Civil Code § 51.7(a) .......................................................................................... 5, 6

California Civil Code § 52.1 ................................................................................................... 6

California Government Code § 12940(j)(1) .......................................................................... 10

California Government Code § 12960(b) .............................................................................. 10

California Government Code § 12960(d) .............................................................................. 10

California Government Code § 12965(b) .............................................................................. 10

Fed.R.Civ.Proc. 12(b)(6) ........................................................................................................ 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Defendants Virgin America, Inc. ("Virgin") and Alaska Air Group, Inc. ("Alaska") (collectively referred to in the Complaint as "Airline Defendants"), move the Court under Fed.R.Civ.Proc. 12(b)(6) for an order dismissing a portion of Jane Doe's ("Plaintiff") Complaint on the grounds that certain of the tort and statutory claims fail to state a claim.

The behavior by Defendant Stuart Dinnis, as alleged in the Complaint and taken on the assumption that the facts are true for the purposes of this motion, as is required, was wrong.  This motion is not about whether the alleged acts are condoned by the Airline Defendants - they clearly are not.  Rather, the issue is whether the facts as pled state valid claims against the Airline Defendants.  Based on California law, they do not.

The Complaint alleges sexual harassment in Canada by an Australian, Defendant Stuart Dinnis, who worked for the California-based Virgin against a Texas resident, Plaintiff.[1]  Plaintiff nevertheless claims rights against the Airline Defendants under several California statutes. But due process prevents the extraterritorial applicability of California law in this situation. And, even if California could apply its law, California's governmental interest test calls for application of Ontario, Canada or Texas law. For these reasons, among others, Plaintiff's claims based on alleged violations of California statutes are improper.

Plaintiff's Government Code ("FEHA") claim fails for two other reasons. First, Plaintiff did not plead that she fulfilled the required administrative remedy through the California Department of Fair Employment and Housing within one year of the date on which the alleged unlawful practice occurred. Second, Plaintiff cannot claim FEHA rights because it only protects employees, applicants, volunteers, and persons who provide services for the defendant. Plaintiff does not fall within any of those categories.

---

[1] Dinnis' alleged wrongful acts took place in October 2016 while he was employed by Virgin.  In November 2016, Virgin terminated Dinnis.  In December 2016, Alaska acquired Virgin.  Plaintiff inaccurately states that "Virgin and Alaska were each agents and/or employees of the other [in October 2016]," apparently to avoid dismissal of Alaska at this stage. Notwithstanding the artful pleading, Alaska expects to challenge this allegation at a later time since there is no evidence to support it.

Plaintiff also cannot maintain claims of negligent and intentional emotional distress, assault or battery under any potentially applicable law. As to the Airline Defendants, each of these claims, along with the Civil Code claims, rely on Plaintiff establishing *respondeat superior* liability. However, to the extent an employee batters and assaults someone, he serves his own purposes (however twisted those may be), not those of his employer. As a matter of law, any assault of Plaintiff would have been outside the course and scope of Dinnis' agency with Virgin. Plaintiff cannot repudiate that conclusion either legally or through artful pleading.  Thus, the Court should dismiss the First through Eighth causes of action against the Airline Defendants with prejudice.

## II.   RELEVANT ALLEGATIONS FROM THE COMPLAINT

To start, the Complaint contains implausible allegations that are designed to do little more than move Plaintiff past a motion to dismiss (e.g., Virgin was an employee of Alaska (p.2:3-5), and "Dinnis' motivation [for attacking Plaintiff] was [a natural development] of his workplace responsibilities" (p.7:17).).  But the Airline Defendants accept the accuracy of the factual allegations for purposes of this motion, as they must.

Plaintiff resides in Texas. (p.2:9.)  Virgin has its principal place of business in Burlingame, California. (p.1:25-26.)

Alaska, a holding company with no direct employees, is incorporated in the State of Delaware with its principal place of business in Washington, and, according to the Complaint, is "the parent company of Virgin." (p.1:27-28.)  "Virgin and Alaska are jointly and severally liable for each other's … wrongdoing … in that they operate as a single business enterprise." (p.2:1-2.)  Plaintiff alleges, "Virgin and Alaska were each agents and/or employees of the other." (p.2:3-5.) Plaintiff does not allege any relationship between Dinnis and Alaska, other than by virtue of Virgin having employed Dinnis, or any knowledge by Alaska of the activities described in the Complaint.

At the time of the alleged assault, Dinnis was a California resident and Virgin's Director of Loyalty. (pp.2:7-8; 3:1.) Other than alleging Virgin and Dinnis were California residents, Plaintiff makes no allegations connecting California to the alleged events described in the Complaint.

In October 2016, Research Now employed Plaintiff as a "global expert," and within the scope

of such employment Plaintiff sought "key strategic relationships with loyalty professionals, including airlines executives."  (p.2:23-26.) Plaintiff travelled to a conference in Toronto, which Dinnis also attended. (p.2:27-3:1.) "[Virgin and Dinnis] partnered with Research Now." (p.3:4.)  "To Research Now, Virgin was a valuable account, and Dinnis a key player with whom Plaintiff should meet." (p.3:5-6.) On the evening of October 24, Plaintiff desired to develop business for Research Now. (p.3:9-12.) That night at a work-related event after a work-related conference, Plaintiff met Dinnis. (p.3:13-16.) Dinnis was "drunk" and approached Plaintiff. (p.3:17-22.) Afterwards, Dinnis saw Plaintiff at a hotel. (p.3:23-27.)  Dinnis followed Plaintiff to a hotel elevator. (p.4:1.)  Then, Dinnis kissed, grabbed, and pulled Plaintiff. (p.4:5-21; 5:1-5:21.)

Plaintiff continues by speculating that "Dinnis selected Plaintiff as his victim knowing it was important for her professional standing that she not upset business partners and hoping that would make her an easy target." (6:10-11.) The Complaint goes on to allege, "Virgin was well aware that Dinnis was known for carrying out lewd and drunken behavior in front of business associates and other Virgin employees, and sexually assaulting business associates, but did nothing to stop his unlawful behavior." (p.6:13-15.) "Virgin could have, and should have done more to supervise, train and discipline Dinnis, and to protect Plaintiff." (p.7:1-4.) "Virgin knew or should have known that [Dinnis] was unfit to work with women in the travel industry, and that he posed a particular risk of sexually harassing and assaulting them. Virgin's negligence in failing to discipline Dinnis was a substantial factor in causing harm to Plaintiff." (p.7:5-8.)

Plaintiff argues that, "at all times relevant, Dinnis acted as an agent of Virgin. Dinnis attended the functions where these events occurred in furtherance of, and for the benefit of, Virgin's business. Virgin paid his travel and accommodation expenses for the Mega Loyalty Event. … His conduct at the networking events was broadly incidental to the enterprise undertaken by Virgin." (p.7:9-14.)

Plaintiff further argues that "[t]he incidents alleged herein were an outgrowth of Dinnis' employment with Virgin and the risk of tortious injury presented by Dinnis' behavior at these events was inherent in the working environment. Dinnis' motivation was an outgrowth of his workplace responsibilities, conditions or events. Consumption of alcohol at these types of events was a

1   customary incident to Dinnis' employment with Virgin and was tolerated and ratified, if not

2   encouraged, by Virgin. At a minimum, Virgin was aware of the consumption of alcohol during these

3   types of events, and Dinnis' drinking to excess was foreseeably within the course and scope of his

4   employment." (p.7:15-21.)

5       Based on these allegations and arguments, Plaintiff makes a first claim against the Airline

6   Defendants for Negligent Retention and Supervision, the lone tort claim Plaintiff makes based on the

7   Airline Defendants' alleged direct liability. Plaintiff argues that "[t]he Airline Defendants knew or

8   should have known not only that Dinnis was unfit or incompetent to work directly with women and

9   posed a particular risk of sexually harassing and assaulting them, but also that this unfitness created a

10  particular risk to Plaintiff." (p.8:17-19.) Plaintiff argues that the Airline Defendants negligently

11  supervised and/or retained Dinnis with a conscious disregard of the rights of safety of others. (p.8:27-

12  28.)

13      Plaintiff next argues the Airline Defendants' vicarious liable for Dinnis' alleged wrongful

14  conduct:

15      The Airline Defendants are liable for the actions of its employees under the doctrine of
        *respondeat superior.* Dinnis' conduct was committed within the scope of his employment. A
16      causal nexus existed between (i) Dinnis' interaction with women working in the travel
        industry and (ii) his abuse of power to sexually harass them, including Plaintiff.
17

18      Dinnis' conduct is not so unusual that it would seem unfair to include the loss resulting from
        it among other costs of the Airline Defendants' business. As such, holding the Airline
19      Defendants liable furthers the policy goals of respondeat superior, including the prevention of
        future assaults by employees of the Airline Defendants.
20

21  (pp.9:18-25; 10:14-22; 11:7-15; 12:1-10; 13:24-14:4; 14:18-26.) Plaintiff also argues that "Each act

22  of battery carried out by Dinnis was foreseeable given [his] known history." (pp.11:10-11; 12:4-6;

23  13:27-28; 14:24-26.) Based on this *respondeat superior* argument, Plaintiff sues the Airline

24  Defendants for alleged *direct* liability for Intentional Infliction of Emotional Distress (2nd claim),

25  Negligent Infliction of Emotional Distress (3rd claim), Assault (4th claim), and Battery (5th claim).

26      Plaintiff also sues the Airline Defendants for violations of California statutes based on

27  *respondeat superior.* Plaintiff pleads a sixth claim for violation of FEHA, arguing that the Airline

28

Defendants should have retrained or fired Dinnis before he sexually assaulted Plaintiff. (p.12:19-21.) However, plaintiff does not plead that she was an employee, applicant, unpaid intern, volunteer, or person providing services pursuant to a contract with either Airline Defendant. Nor does Plaintiff plead that she pursued an administrative remedy or that she received a "Right to Sue" letter before making the FEHA claim.

Plaintiff pleads a seventh claim for violation of Civil Code § 51.7(a),[2] which Plaintiff quotes as stating: "All persons within the jurisdiction of the state have the right to be free from … violence … on account of … [sex]." (p.13:1-4.) Plaintiff argues that Dinnis violated her civil rights that she claims Civil Code § 51.7 protects, and that the Airline Defendants are therefore vicariously liable, notwithstanding that she does not claim to have ever set foot in California. (pp.13:24-14:4.)

Plaintiff pleads an eighth claim for violation of Civil Code § 52.1, which protects the civil rights of persons in California, arguing the Airline Defendants are vicariously liable for Dinnis' violations. (p.14:6-27.)

## III.    LEGAL ARGUMENT

### A.    Legal Standard for a 12(b)(6) Motion

Dismissal is appropriate under Fed.R.Civ.Proc. 12(b)(6) when the allegations fail "to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009).

A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) .

As explained below, all statutory claims and all claims that are based on the Airline Defendants' alleged statutory liability must be dismissed.

---

[2] All code references herein are to California codes, unless expressly noted.

**B.     Plaintiff, a Texas Citizen, Cannot Claim Rights Under California Statutes Based on Alleged Wrongful Conduct in Canada.**

### (i)  Due Process Constrains California's Application of its Statutes

Plaintiff makes claims against the Airline Defendants under three California statutes:  Gov't. Code § 12940(k), Civil Code § 51.7(a), and Civil Code § 52.1.

But a state cannot draw into control of its law otherwise foreign controversies, on slight connections, simply because it is a forum state.  *Lauritzen v. Larsen*, 345 U.S. 571, 590-591 (1953) . Due process constrains the determination of which law to apply to a controversy.  *See*, *e.g.*, *Angel v. Bullington*, 330 U.S. 183, 188 (1947) (citations omitted).

Following this authority, the California courts have already held that the FEHA does not protect nonresidents employed outside California even if the employer is California-based: "Applying the FEHA in this situation would raise serious constitutional concerns." *Campbell v. Arco Marine, Inc.*, 42 Cal.App.4th 1850, 1857-1858 (1996)  (nonresident of California could not sue California employer under FEHA for sexual harassment occurring at sea); *see also Norwest Mortgage, Inc. v. Superior Court*, 72 Cal.App.4th 214, 227 (1999)  (California could not apply its unfair competition law to claims by non-California residents arising out of conduct occurring outside of California's borders by actors headquartered and operating outside of California).  Thus, Plaintiff cannot make claims against the Airline Defendants under California statutory law since Plaintiff is a non-California resident and the claims arise outside of California.

### (ii)     Courts Presume California Statutes Do Not Apply Extraterritorially

The California Legislature did not intend a statute to be "'operative, with respect to occurrences outside the state, ... unless such intention is clearly expressed or reasonably to be inferred 'from the language of the act or from its purpose, subject matter or history.'"  *Sullivan v. Oracle Corp.*, 51 Cal.4th 1191, 1207 (2011).

Here, neither the language nor the legislative history of any of the statutes under which Plaintiff claims rights supports a conclusion that the California Legislature intended that any statute apply extraterritorially. For example, Plaintiff's seventh claim, Civil Code § 51.7(a), pertains by its terms to "persons within the jurisdiction of this state," i.e., California, not to non-residents who allege

1   harm outside California. Similarly, the other California Civil Code sections under which Plaintiff

2   claims rights establish the "law of [California]," not the law of Texas or Ontario, Canada. *See* Civil

3   Code § 4. Accordingly, the presumption against extraterritoriality applies to the California statutes in

4   full force. *See Sullivan, supra,* 51 Cal.4th at 1207.  Because there is nothing to rebut this strong

5   presumption against extraterritoriality, the California statutes on which Plaintiff relies are

6   inapplicable as a matter of law.

7

8         **(iii)**    **California's Conflict-of-Law Rules Also Prevent Application of the California Statutes in This Case**

9        Because this dispute is connected with more than one state, California's conflict-of-law rules

10  apply to determine which law governs the claims. As explained below, California's conflict-of-law

11  rules require application of foreign law even if California could apply its own law.

12       In diversity cases, a federal court must apply the conflict-of-law rules of the state in which it

13  sits (subject to due process constraints).  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487,

14  496-97 (1941).  California courts apply a "governmental interest approach," requiring an "analysis of

15  the respective interests of the states involved," to determine which state's law should apply to a

16  particular legal issue.  *Hurtado v. Superior Court*, 11 Cal.3d 574, 579 (1974) .  As such, this Court

17  applies the "governmental interest approach" to determine whether the law of California (due process

18  permitting) or the law of another jurisdiction (e.g., Texas or Canada) applies to Plaintiff's claims.

19       California's governmental interest approach involves three steps:  First, the court determines

20  whether the foreign law differs from that of the forum. Second, if there is a difference, the court

21  examines each jurisdiction's interest in the application of its own law to determine whether a true

22  conflict exists.  Last, if each jurisdiction has a legitimate interest in the application of its rule of

23  decision, the court analyzes the comparative impairment of the interested jurisdictions and applies the

24  law of the state whose interest would be more impaired if its law were not applied.  *Tucci v. Club*

25  *Mediterranee*, 89 Cal.App.4th 180, 189 (2001) *citing Offshore Rental Co. v. Continental Oil Co.*, 22

26  Cal. 3d 157, 161-162, 165 (1978).

27       Importantly, "it is clear that there is no presumption against the application of the law of a

28

**DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR GROUP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; (CASE NO. 4:18-CV-02420-DMR)**

1    foreign state to an issue once a party timely invokes that law . . . and shows that the application of

2    that law will further an interest of the foreign state." *Camp v. Forwarders Transport, Inc.*, 537

3    F.Supp. 636, 639 (1982).

4         The first prong of the test is an assessment of whether the laws of California differ from those

5    of the other interested jurisdictions.  Here, Canada and Texas law differ from California law in that

6    California statutes are not the law in those states.[3]

7         The second prong of the test is an assessment of the interests of the different jurisdictions,

8    such as the jurisdiction where the conduct occurred.  "The state with the 'predominant' interest in

9    controlling conduct normally is the state in which such conduct occurs." *Cable v. Sahara Tahoe*

10   *Corp.*, 93 Cal.App.3d 384, 394 (1979); *see also Hernandez v. Burger*, 102 Cal.App.3d 795, 801-803

11   (1980) (recognizing that the state where the alleged wrongful (*i.e.*, negligent) conduct takes place has

12   an interest in deterring the conduct and applying its law). Further, when the issue in a case is active

13   conduct, the jurisdiction in which the conduct leading to injury occurred becomes more important as

14   the jurisdiction with the most significant interest in the resolution of any conflicts issue.  *Kasel v.*

15   *Remington Arms Co.*, 24 Cal.App.3d 711, 733 (1972). For these reasons, Ontario is interested in

16   applying its law to any wrongful conduct within its borders.

17        Texas, for its part, is presumably interested in applying its law to compensate its citizen,

18   Plaintiff, to the extent she was harmed. *See Bernhard v. Harrah's Club*, 16 Cal.3d 313, 317-319

19   (1976).

20        Virgin, with its principal place of business in California, is a California resident. *ABF Capital*

21   *Corp. v. Berglass*, 130 Cal.App.4th 825, 834 (2005) (corporation's principal place of business is

22   generally deemed to be its residence). California courts recognize that a state is concerned with the

23   limitation of damages payable by resident defendants. *See Browne v. McDonnell Douglas Corp.*, 504

24   F.Supp. 514, 517-518 (1980) and *In re Aircrash in Bali, Indonesia*, 684 F.2d 1301, 1307 (9th Cir.

25   1982) (Damages limitations are "intended to protect defendants from large verdicts."). Further, a state

26

27   ───────────────────
     [3] Because neither Texas law nor Ontario law regarding the alleged torts differs materially from California
     law, the Airline Defendants do not assert that either foreign law applies to the tort claims.

28   **DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR**         -8-
     **GROUP, INC.'S NOTICE OF MOTION AND MOTION TO**
     **DISMISS PLAINTIFF'S COMPLAINT; (CASE NO. 4:18-CV-**
     **02420-DMR)**

has little or no interest in compensating a non-resident (*see Reich v. Purcell*, 67 Cal. 2d 551, 556 (1967); *see also, e.g., Browne*, *supra*, 504 F.Supp. at 519 (California's interest in providing maximum recovery for resident plaintiffs not implicated when none of the plaintiffs are California residents)), and it certainly has no interest in extending non-residents greater rights than they are afforded by their home state. *Ryan v. Clark Equipment Co.*, 268 Cal.App.2d 679, 683 (1969). Thus, California courts would not extend a Texas citizen rights arising under California statutes that give her more or different rights than she enjoys in Texas, particularly when she seeks damages from a California corporation.

The third step of the governmental interest analysis only comes into play if each jurisdiction has a legitimate interest in the application of its rule of decision, in which case the court analyzes comparative impairment and applies the law of the state whose interest would be more impaired if its law were not applied. A "false conflict" is presented where only one state has interest in applying its law. *Hernandez v. Burger*, 102 Cal.App.3d 795, 799 (1980). Here, there is no real conflict of law; there is only a false conflict as to application of the California statutes, because applying California statutory law providing for compensation to the non-resident plaintiff serves no interest of California. *See Hurtado, supra,* 11 Cal.3d at 580. In this case, the laws of Texas or Canada, the interested jurisdictions, would be applied, regardless of the forum. *See Hernandez* 102 Cal.App.3d at 799.

Finally, a policy reason militates against the application of California law to this controversy and lends further support to California's interest in refusing to extend the non-citizen Plaintiff rights under the California statutes. Applying California law to protect a non-resident plaintiff encourages forum shopping. *Ryan, supra,* 268 Cal.App.2d at 683. As the California Supreme Court stated, "[p]rotection of persons . . . who wrongfully seek to circumvent the substantive laws of one jurisdiction by enlisting the aid of the courts in another violates and offends the public policy of both jurisdictions . . . our courts must vigilantly resist such recruitment efforts." *Wong v. Tenneco, Inc.*, 39 Cal. 3d 126, 137 (1985).

For all these reasons, the California statutory claims should be dismissed.

**C.    Even Assuming, *Arguendo,* Plaintiff Could Claim Rights Under California Statutes, the FEHA Claim Must Be Dismissed Because Plaintiff Failed to File an Administrative Complaint, and No Defendant Employed Plaintiff.**

The FEHA anti-discrimination statutes are set forth in Article 1 of Chapter 6 of the part of the Government Code pertaining to "fair employment and housing." "Any person claiming to be aggrieved by an alleged [practice made unlawful under Chapter 6] may file with the department [of Fair Employment and Housing] a verified complaint" regarding the practice.  Gov't. Code § 12960(b).  With inapplicable exceptions, the verified complaint must be filed within "one year from the date upon which the alleged unlawful practice … occurred." Gov't. Code § 12960(d).  The timely filing of an administrative complaint and exhaustion of that remedy is a prerequisite to maintenance of a civil action for damages under the FEHA. *See* Gov't. Code § 12965(b); *Commodore Home Systems, Inc. v. Sup.Ct. (Brown)*, 32 Cal.3d 211, 214 (1982). Failure to exhaust the administrative remedy is a "jurisdictional" defect. *Okoli v. Lockheed Technical Operations Co.* 36 Cal.App.4th 1607, 1613 (1995).  Because Plaintiff fails to allege having filed an administrative complaint based on the alleged 2016 attack, she cannot make a civil FEHA claim.

Second, the FEHA ban on workplace harassment applies to "an employee, an applicant, an unpaid intern or volunteer, or a person providing services pursuant to a contract." Gov't. Code § 12940(j)(1).  Plaintiff does not fall in any of these categories.  For this additional reason, her FEHA claim must be dismissed.

**D.    The Airline Defendants Cannot Be Vicariously Liable for Dinnis' Wrongful Conduct Directed at Plaintiff Because, as a Matter of Law, the Conduct Was Outside the Scope of Dinnis' Employment.**

The linchpin of Plaintiff's allegations against the Airline Defendants is that Dinnis' misconduct fell within the scope of his employment.  However, as explained below, Dinnis' wrongful acts cannot, as a matter of law, be characterized as "typical of or broadly incidental to the enterprise undertaken by" the Airline Defendants as required under *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 1004 (1995) to impose vicarious liability.

"[L]osses fairly attributable to an enterprise—those which foreseeably result from the conduct of the enterprise—should be allocated to the enterprise as a cost of doing business."  *Id.* at 1004.  But "[i]f an employee's tort is personal in nature, mere … attendance to occupational duties prior or

DEFENDANTS VIRGIN AMERICA, INC. AND ALASKA AIR GROUP, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; (CASE NO. 4:18-CV-02420-DMR)

-10-

subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of *respondeat superior*." *Id.* at 1005. "In such cases, the losses do not foreseeably result from the conduct of the employer's enterprise and so are not fairly attributable to the employer as a cost of doing business." *Ibid.* "[A]n employer will not be held vicariously liable where ... 'it clearly appears that neither directly nor indirectly could [the employee] have been serving his employer.'" *Id.* at 1008.

The issue of whether an employee's acts are within the course and scope of employment, for purposes of the doctrine of *respondeat superior*, may be decided as a matter of law when the court concludes that the relationship between an employee's work and wrongful conduct is so attenuated that a jury could not reasonably conclude that the act was within the scope of employment. *John Y. v. Chaparral Treatment Center, Inc.*, 101 Cal.App.4th 565 (2002); *see also Farmers Ins. Group, supra*, 11 Cal.4th 992, 1019 (ordinarily, scope of employment presents a question of fact, but it becomes a question of law when the facts are undisputed and no conflicting inferences are possible.) Following this logic, the *John Y. v. Chaparral Treatment Center, Inc.* Court, addressing alleged molestation by a treatment center counselor, upheld the trial court's decision to refuse to instruct the jury on the issue of the assailant's employer's *respondeat superior* liability, reasoning that the "tort [must be] engendered by or arise from the work" for such liability to apply. *Id.* at 575.

The California Supreme Court extensively addressed *respondeat superior* liability based on sexual assault in *Farmers Ins. Group*. The *Farmers Ins. Group* Court evaluated whether a male deputy exercised job-conferred authority over female trainees and subordinates when he offensively touched them. The *Farmers* Court concluded that a sexual assault at the workplace by the deputy sheriff was unrelated to the enterprise undertaken by the employer, even while recognizing that "sexual harassment is a pervasive problem." *Id.* at 1009. *Respondeat superior* could not apply unless the risk "may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer." *Ibid.*

Other California courts that have analyzed the issue have similarly concluded that sexual assault is outside the scope of employment, not an outgrowth of employment, not inherent in nor

typical of employment, and not foreseeable. *See Daza v. Los Angeles Community College District*, 247 Cal.App.4th 260, 269 (2016); *Myers v. Trendwest Resorts, Inc.*, 148 Cal.App.4th 1403, 1432 (2007) (finding that sexual conduct was outside the scope of employment as a matter of law, motivated by personal reasons unrelated to job duties, even though job included mentoring of salespersons which could lead to emotional relationships, because the sexual conduct was not typical of or broadly incidental to the enterprise). Following this line of authority, each of Plaintiff's claims against the Airline Defendants must be dismissed to the extent they are based on *respondeat superior*, because Dinnis did not serve any purpose of the Airline Defendants as a matter of law when he allegedly assaulted Plaintiff in a hotel after hours at a trade show.

Plaintiff's argument that *respondeat superior* is appropriate because Dinnis must have known that Plaintiff would be reluctant to complain about being attacked by him is untenable under clear California authority because his conduct was personal in nature and did not in any way relate to furthering Virgin's enterprise.  As noted above, the California Supreme Court in *Farmers* held that *respondeat superior* liability does not apply "if an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior." *Farmers, supra*, 11 Cal.th 992, 1004-1005.  For example, in *Myers, supra,* 148 Cal.App.4th 1403, the Court held that imposition of *respondeat superior* liability was improper even accepting that the assailant's supervisory role over the victim was more likely to create an emotional relationship resulting in an assault, because the supervisor's sexual conduct toward plaintiff was not typical of or broadly incidental to the employer's enterprise of selling timeshares.  *Ibid*.  Similarly, the Airline Defendants cannot be held liable because Dinnis' tenuous business relationship with Plaintiff placed him at a trade show and a hotel where the alleged misconduct occurred which she might be reluctant to complain about because the conduct was not typical of or broadly incidental to the employer's enterprise.

The California Supreme Court's rationale in *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal.4th 291 (1995) further bolsters this conclusion.  *Lisa M.* involved allegations of

*respondeat superior* based on the assault by a hospital technician who took advantage of solitude with a naïve patient to commit an assault for reasons unrelated to work. *Id.* at 301. The technician's sexual misconduct did not arise out of the performance of his duties, even though the circumstances of his examination of the patient made it possible. *Ibid.* The *Lisa M*. Court concluded: "If ... the assault was not motivated or triggered off by anything in the employment activity but was the result of only propinquity and lust, there should be no liability." *Ibid.*  Similarly, here, *respondeat superior* liability is improper, because any assault was not motivated or triggered off by anything in the employment activity.  Like the hospital technician, Dinnis' actions did not arise out of his employment duties, but instead originated out of his personal desires.

An evaluation of the three *policy* justifications for the imposition of *respondeat superior* liability leads to the same result. In *Farmers, supra*, 11 Cal.4th 992, the California Supreme Court considered whether imposing vicarious liability would: (1) prevent recurrence of the tortious conduct; (2) give greater assurance of compensation for the victim; and (3) ensure that the victim's losses will be equitably borne by those who benefit from the enterprise that gave rise to the injury. *Id*. at p. 1013.

*Farmers* found it significant that the FEHA already requires employers to take steps to prevent harassment. *Id*. at pp. 1014, 1020. "Because this potential for direct liability [under the FEHA] already furnishes powerful motivation for the [employer] to establish and maintain programs and procedures designed to eliminate sexual harassment …, the imposition of vicarious liability is not essential to … create[ ] a strong incentive for vigilance by those in a position 'to guard substantially against the evil to be prevented.'" *Id*. at p. 1015 (citation omitted).  Although FEHA does not impose liability in the instant case, the California-based employer Virgin was nevertheless required to train Dinnis about sexual harassment in compliance with FEHA. Therefore, the deterrent effect of FEHA training requirements applies here.

Nor does the second justification of providing greater assurance of compensation support liability.  Just as in *Farmers*, where the Court found that alternative liability under FEHA neutralized this factor, here Plaintiff has a possible alternative remedy, i.e., recovery under the tort of negligent retention. *See Id*. at p. 1016.

1    The third factor (equitable bearing of loss by those who benefit from the enterprise) does not

2  justify imposing vicarious liability here.  Dinnis exercised no job-conferred benefit to the Airline

3  Defendants during any of the alleged misconduct. *See Farmers* at p. 1017.  It is inconceivable that

4  Dinnis' sexual misconduct advanced the interests of the Airline Defendants.

5    For these reasons, as in *Farmers*, consideration of the three *respondeat superior* policy

6  justifications bolsters the conclusion that *respondeat superior* liability is improper.

7    Setting aside the policy reasons for not imposing vicarious liability under the facts of this

8  case, Plaintiff is expected to argue vicarious liability is proper because Dinnis' misconduct was

9  foreseeable given his alleged past behavior.  However, the test of foreseeability for vicarious liability

10  is whether "in the context of the particular enterprise an employee's conduct is not so unusual or

11  startling that it would seem unfair to include the resulting loss in the cost of doing business."

12  *Farmers, supra*, at 1004.  Here, the alleged sexual misconduct of Dinnis is unequivocally unusual and

13  startling for anyone let alone a person in charge of Virgin's loyalty program.  Thus, under a vicarious

14  liability analysis, Dinnis' behavior was not foreseeable, which is fatal to Plaintiff's suggestion that

15  the Airline Defendants should be liable for Dinnis' misconduct.

16    In conclusion, because Plaintiff relies on the *respondeat superior* doctrine to impose liability

17  on the Airline Defendants for Intentional Infliction of Emotional Distress, Negligent Infliction of

18  Emotional Distress, Assault, Battery and California Civil Code violations, these claims should be

19  dismissed because California authorities establish such liability does not attach under the facts plead

20  in the present case.

21  **IV.   CONCLUSION**

22    The Airline Defendants request the Court dismiss with prejudice the California statutory

23  causes of actions under Government Code Section 12940(k) and Civil Code Sections 51.7(a) and

24  52.1 along with the claims of Negligent and Intentional Infliction of Emotional Distress, Assault and

25  Battery contained in the First through Eighth causes of action because they fail to state a claim

26  against the Airline Defendants.  The California statutory claims are improper for three reasons.  First,

27  due process prevents the extraterritorial applicability of California law because Plaintiff is a non-

28

resident and the claims arise outside of California.  Second, California's conflict-of-law rules prevent application of these statutory claims.  Third, Plaintiff failed to plead the proper perquisite administrative remedy for the statutory FEHA claim.  Similarly, the common law claims for emotional distress, assault and battery do not state colorable claims.  California courts do not extend *respondeat superior* liability to the reprehensible acts alleged against Defendant Stuart Dinnis because such acts do not fall within any semblance of the course and scope of his employment as a matter of law.  For all of the reasons stated herein, the Airline Defendants respectfully request the Court grant this Motion to Dismiss.

DATED:  June 7, 2018                    **CORNERSTONE LAW GROUP**


 /s/ Paul J. Byrne
 /s/ John C. Brown
PAUL J. BYRNE
JOHN C. BROWN
Attorneys for Defendants
VIRGIN AMERICA, INC. and ALASKA AIR GROUP, INC.

## **CERTIFICATE OF ELECTRONIC SERVICE**

I hereby certify that on June 7, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to those attorneys of record registered on CM/ECF system.


DATED this 7th day of June, 2018.


/s/ Paul J. Byrne
PAUL J. BYRNE