LORI E. ANDRUS (SBN 205816)
lori@andrusanderson.com
Paul Laprairie (SBN 312956)
paul.laprairie@andrusanderson.com
ANDRUS ANDERSON LLP
155 Montgomery Street, Suite 900
San Francisco, CA  94104
Telephone:     (415) 986-1400
Facsimile:      (415) 986-1474

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JANE DOE,<br><br>             Plaintiff,<br><br>     vs.<br><br>STUART DINNIS,<br><br>             Defendant. | **CASE NO. 4:18-cv-05393-DMR**<br><br>**DECLARATION OF BENJAMIN J. ALBRITTON IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT UPON DEFAULT** |

I, Benjamin J. Albritton, declare as follows:

1. I have a doctorate in clinical psychology and I am a board-certified forensic psychologist by the American Board of Professional Psychology. My curriculum vitae is attached as Exhibit A.

2. I have been licensed to practice psychology in the state of Texas since 1986.

3. On October 29, 2018 myself and my colleague, Dr. Mary Madison Eagle, met with Jane Doe for approximately two hours and fifteen minutes.

4. During our meeting, Ms. Doe related to me the details of an alleged sexual assault which occurred in October of 2016.

5. Ms. Doe related to me that she was crying and visibly upset following this sexual assault and subsequently had difficulty sleeping that night.

6. Ms. Doe related that she told her boss and another colleague at the conference what had happened to her and they attempted to support her. Ms. Doe subsequently missed a number of conference events in the following two days due to fear of potentially seeing Mr. Dinnis at those events. When she returned to Dallas, she informed the HR department at her employer about the events that took place at the conference. Subsequently, the head of HR and the legal team for Virgin Airlines reportedly had a phone conference in which Ms. Doe told her version of the events to everyone taking part in the call. Her employer's HR department obtained videos of the alleged sexual assault, which occurred in a hotel elevator. Ms. Doe reported that it was painful to watch the videos. She reported crying in the presence of her employer's HR staff throughout watching the videos.

7. Ms. Doe denied any history of outpatient treatment following the alleged sexual assault with the exception of one in-person session and approximately two phone sessions with a counselor provided to Ms. Doe by her Employee Assistance Program. Ms. Doe indicated she did not find this counselor helpful and elected to stop seeing her after the in-person session.

8. During our meeting, Ms. Doe described several detrimental effects of the alleged sexual assault by Mr. Dinnis. Ms. Doe reported her role at the time of the alleged assault

1  necessitated that she travel approximately two weeks or more per month because she was in
2  charge of developing and maintaining business partnerships both domestically and internationally.
3  Following the assault, Ms. Doe manifested extreme anxiety when riding on elevators.  She
4  described an incident that happened during her layover in New York on her way from Toronto to
5  Dallas: "I came to New York on a layover from Toronto and in New York a guy ran into the
6  elevator I was on at the airport and I started crying.  He said, 'Gosh, I'm so sorry did I scare you?'
7  And I said, 'Don't worry, it's not your fault.'"  This caused obvious difficulty with her
8  employment at the time in that she needed to be travelling a considerable percentage of her time
9  on domestic and international flights.  She noted she would also have to take the stairs n almost
10 all situations rather than take an elevator to avoid experiencing high levels of anxiety.
11 Ms. Doe indicated that after the alleged sexual assault, she would frequently wake up crying
12 following a nightmare and had difficulty catching her breath. Regarding the nightmares, Ms. Doe
13 reported she would hear women screaming "help me" and then would feel a push from the back
14 and wake up. Ms. Doe reported two instances of panic attacks in which she woke up and felt like
15 she could not breathe; one that occurred early on after the attack and another that occurred after
16 her daughter's high school graduation.  Ms. Doe indicated her oldest daughter was aware that
17 something was bothering her mother because the girls would often sleep in the bed with Ms. Doe
18 following her divorce.  She reported she had to ask her daughters for help during those times.
19         9.      Additionally, Ms. Doe experienced anxiety in thinking about sending her daughter
20 to college and what could potentially happen to her in the dorm rooms to the point that she had to
21 begin taking an antidepressant (Celexa) for a brief period of time to control the symptoms.  Ms.
22 Doe reported she has not dated anyone since the alleged attack as she is scared of meeting new
23 men, especially as it pertains to online dating.  Further, she noted building relationships is key in
24 her line of work and she now is hesitant and not as outgoing or friendly when meeting new men
25 as she was before the attack.  This is obviously hurtful to her in a business capacity, as she is held
26 back from pursuing potential partnership opportunities out of anxiety related to the events of
27 October 2016.
28

1       10.     The attack added to an already stressful collection of events happening at that time

2  point in Ms. Doe's life, including a separation and impending divorce from her husband and her

3  daughter experiencing serious issues with anemia which required extensive medical attention.

4  Further, Ms. Doe has a history of additional traumatic events in her life, including a car accident

5  in which she waited for two hours to be rescued and a miscarriage that occurred after the birth of

6  her first daughter.

7       11.     Ms. Doe expressed that she feels guilt and shame surrounding the alleged sexual

8  assault and believes in hindsight she would "have done a lot of things differently."  However, she

9  noted she was in shock and did not know what to do at the time the attack was happening because

10 Mr. Dinnis was in a position of power and she was afraid of the potential negative business

11 repercussions if she pursued talking to the police about the incident.  Given the awkwardness of

12 her employment situation, her expanding role, and an attempt to curry favor from a potential

13 account, her efforts to resist and mitigate were compromised.

14      12.     Ms. Doe reported that her mother took her to the police station within

15 approximately two to three days after she was home from the conference.  The police told her that

16 if she reported something and made a formal complaint, they would have to act on it.  Ms. Doe

17 noted she was initially not sure if she wanted to file an official complaint and so she declined to

18 so at the time.

19      13.      Ms. Doe reported that she eventually learned that Mr. Dinnis allegedly committed

20 similar attacks with other women and then ultimately decided to come forward in an attempt to

21 prevent him from doing the same thing again.

22      14.     Ms. Doe reported that an HR professional at Ms. Doe's office became aware that

23 Ms. Doe was struggling emotionally following the attack and experiencing high levels of anxiety.

24 They recommended she contact a therapist through their Employee Assistance Program.

25 However, records are reportedly not available from these sessions due to a fire that occurred at the

26 therapist's office.  When Ms. Doe was queried about why she did not seek additional counseling,

27 she described that she was a single mother of three kids with a long commute so she was unaware

28

3

DECLARATION OF BENJAMIN J. ALBRITTON IN SUPPORT OF PLAINTIFF'S MOTION FOR JUDGMENT UPON DEFAULT

Case No: 4:18-cv-05393-DMR

of when she would have time to fit counseling into her schedule. She indicated she also felt as though she should be able to work through the situation on her own with support through individuals at her church. She has found this helpful in the past and has always maintained active church involvement.

15. Our evaluation of Ms. Doe was limited to an interview with her, a review of the Complaint in the lawsuit, Ms. Doe's timeline of events, the elevator videos of the alleged sexual assault, and Ms. Doe's resume.

16. Given the self-reported information from Ms. Doe in addition to the collateral documents reviewed, there appears to be significant reason to believe that Ms. Doe's present impairments, consistent with a DSM-5 diagnosis of Posttraumatic Stress Disorder ("PTSD"), significantly affect her performance in her job as well as in her interpersonal relationships. DSM-5 diagnostic criteria for PTSD include: A. Exposure to actual or threatened death, serious injury, or sexual violence; B. Presence of at least one intrusion symptom (e.g., distressing memories or dreams of the event, dissociative reactions such as flashbacks, intense or prolonged physical distress when reminded of the event, or marked physiological reactions when reminded of the event); C. Persistent avoidance of stimuli associated with the traumatic event; D. Negative alterations in cognitions and mood associated with the traumatic event; and E. Marked alterations in arousal and reactivity associated with the traumatic event. These symptoms have to begin or worsen after the traumatic event and have to have been present for at least a month for a PTSD diagnosis.

17. Inherent in forensic evaluations related to emotional damages claims is a possible motivation to present oneself as more impaired than is actually the case. Ms. Doe presented no obvious indications of malingering or exaggerating her symptoms. In fact, rather than over-reporting her symptoms, she reported that some of her symptoms (e.g., difficulty concentrating at work; nightmares), have ameliorated over time. Although she has been hesitant to seek treatment, despite the severity of her symptoms, it is clear Ms. Doe would benefit from individual therapy from a doctoral level therapist in addition to a psychiatric medication evaluation to address and

1  improve the symptoms that continue to affect her day to day life as a result of the alleged sexual

2  assault.

3      18.    Based on information provided by Ms. Doe, the attack occurred during a time

4  frame when she was vulnerable as a result of some typical life stressors, compounded by her

5  divorce.  Pre-existing issues such as being trapped in a car following an automobile accident most

6  likely exacerbated her perception of the alleged attack and subsequent symptomology.  Even

7  given relatively mild pre-existing difficulties, it is apparent that her reported history reflects a

8  significant change in her functioning and employment which would not have occurred had the

9  alleged sexual assault not occurred.

10     19.    I declare under penalty of perjury pursuant to the laws of the state of California

11  that the foregoing is true and correct.

12  February_22, 2019

_____
Benjamin J. Albritton, Psy. D., ABPP