1

2

3

4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

7   JANE DOE,                          Case No.  18-cv-05393-DMR

8              Plaintiff,            **REQUEST FOR REASSIGNMENT;**
                                     **REPORT AND RECOMMENDATION**
9        v.                          **RE MOTION FOR DEFAULT**
                                     **JUDGMENT**
10  STUART DINNIS,
                                     Re: Dkt. No. 74
11             Defendant.

12          Plaintiff Jane Doe filed this action against Stuart Dinnis, Virgin America, Inc., and Alaska

13  Air Group, Inc. (together, the "Airline Defendants") following an alleged 2016 sexual assault by

14  Dinnis.  Following Dinnis's failure to appear and without objection from the remaining parties, the

15  court severed Doe's claims against Dinnis; Doe's claims against the Airline Defendants proceeded

16  in a separate related action which eventually was resolved through settlement.  *See Doe v. Virgin*

17  *America, Inc.*, Case No. C-18-cv-2420 DMR.  Doe now moves the court for entry of default

    judgment against Dinnis pursuant to Federal Rule of Civil Procedure 55(b)(2).  [Docket No. 74.]
18
    The court held a hearing on November 14, 2019, after which Doe filed an amended complaint and
19
    additional submissions in support of her motion.  [Docket Nos. 72, 74, 76, 78.]

20          Dinnis has not filed a declination or consent to the jurisdiction of a magistrate judge

21  pursuant to 28 U.S.C. § 636(c).  Therefore, the court issues this Report and Recommendation and

22  reassigns this case to a district judge for final disposition, with the recommendation that Doe's

23  motion be GRANTED.

24  **I.     BACKGROUND**

25          Doe is an adult woman who resides in and is a citizen of Texas.  [Docket No. 76 (Am.

26  Compl.) ¶ 3.]  Dinnis is an adult man.  At the time Doe filed the original complaint in this action,

27  Dinnis was a citizen, resident, and domiciliary of Brisbane, Australia.  *Id.* at ¶ 2.  At the time of

28  the incident that forms the basis of the complaint, Dinnis was employed by Virgin America, Inc.

United States District Court
Northern District of California

("Virgin") and resided and was domiciled in California, with the intention of remaining in California.  *Id.*

In fall 2016, Doe was a Vice President for Research Now, which is "a global expert in online market research data."  Doe's job responsibilities included "building and maintaining key strategic relationships with loyalty professionals, including airline executives."  *Id.* at ¶ 8.  In October 2016, Doe and her boss traveled to the Mega Loyalty Conference in Toronto, Canada, which "attracted professionals in the travel and loyalty sector from around the world," including Dinnis, who was then Virgin's Director of Loyalty.  *Id.* at ¶ 9.

On October 24, 2016, Doe conferred with her boss about their objectives for the conference and identified Dinnis as "a key player with whom [Doe] should meet."  At a conference-related party that night, Doe introduced herself to Dinnis.  He subsequently approached Doe on the dance floor and was "noticeably drunk," and later spilled a drink on Doe.  *Id.* ¶¶ 10-13.  Doe and her colleagues returned to their hotel in a taxi.  When they arrived at the hotel, Dinnis was waiting for Doe in the lobby.  Doe alleges that "Dinnis knew that, given [Doe's] position with Research Now, and her need to preserve their professional relationship, she would be reluctant to react in a way that could harm her company's relationship with a major client like Virgin," and that Dinnis was "[i]ntent on exploiting [Doe's] professional vulnerability."  *Id.* at ¶¶ 13, 14.

Dinnis followed Doe into an elevator and began to "aggressively kiss[] her and would not stop."  *Id.* at ¶¶ 15-17.  When the elevator stopped at Dinnis's floor, he tried to physically pull Doe from the elevator by her neck and hair.  She resisted, leaning back to stay on her feet inside the elevator, and Dinnis got back on the elevator and resumed his assault.  *Id.* at ¶¶ 18-20.  Dinnis was "even more aggressive, grabbing [Doe's] rear end and pulling her roughly against his groin."  Dinnis was "much taller and much stronger" than Doe and she could not maneuver out of his grasp.  *Id.* at ¶ 20.  Doe "pressed her fist into his chest and kept saying 'No.'"  *Id.* at ¶ 21.  The elevator returned to the ground floor and a colleague of Doe's entered the elevator.  When the elevator reached Doe's colleague's floor, he left the elevator.  Dinnis then resumed his attack on Doe, holding Doe's neck as he "forcibly kissed her" while she said "no."  *Id.* at ¶¶ 22-23.  When

2

the elevator arrived at Doe's floor, Dinnis followed Doe off the elevator and to her hotel room. When they reached her room, he grabbed her by the neck and tried to follow her inside, saying "You want it." *Id*. at ¶¶ 24-25. Doe, filled with terror, fought off Dinnis and yelled out several times, and he finally walked away, leaving Doe "shaking and terrified." *Id*. at ¶¶ 26-28. Her "mouth was raw and her left ear was burning," and she noticed she was missing an earring. *Id*. at ¶ 30.

Dinnis messaged Doe on LinkedIn later that night, stating, "Are you sure? I have a suite if you're keen. xx." *Id*. at ¶ 31. He sent her additional messages the following morning, to which Doe responded that "it's best if we keep things strictly professional." *Id*. at ¶¶ 32-33. Dinnis later messaged Doe, "apologizing for his behavior" and commenting on her attractiveness. He also sent Doe a photo of her earring, which he had found hanging on his jacket. *Id*. at ¶ 34.

Doe alleges that since the assault, she has "experienced high anxiety while travelling, particularly in elevators," and subsequently left her position with Research Now, which required her to regularly travel alone. *Id*. at ¶ 35.

Doe alleges the following claims for relief against Dinnis: 1) intentional infliction of emotional distress; 2) negligent infliction of emotional distress; 3) assault; 4) battery; 5) violation of California's Unruh Act, California Civil Code section 51.7(a); 6) violation of California's Bane Act, California Civil Code section 52.1; and 7) violation of California Civil Code section 52.4. Compl.

## II.    PROCEDURAL HISTORY

On April 23, 2018, Doe filed a complaint against Dinnis and the Airline Defendants, alleging nine claims for relief. *See* Case No. C-18-cv-2420 DMR. Doe and the Airline Defendants consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636, and the Airline Defendants moved to dismiss the complaint. Dinnis did not appear. The court notified the parties that it could not decide the motion to dismiss in Dinnis's absence pursuant to *Williams v. King*, 875 F.3d 500, 503 (9th Cir. 2017), and proposed severing Dinnis from the action. [Docket Nos. 19, 23.] No party objected to severing Dinnis from the action, and on August 30, 2018, the court severed Doe's claims against Dinnis and ordered the clerk to open this action.

1    [Docket No. 27.]¹   On September 20, 2018, the court granted as unopposed Doe's motion to

2    proceed using a pseudonym.  [Docket No. 31.]

3           Doe served Dinnis with the summons and complaint on June 4, 2018.  [Docket No. 16.]

4    Dinnis did not file a responsive pleading or otherwise appear.  The clerk entered Dinnis's default

5    on December 20, 2018.  [Docket No. 36.]  Doe filed the present motion for default judgment on

6    March 1, 2019.  [Docket No. 42.]  In connection with the motion, Doe filed administrative

7    motions to file under seal portions of her motion, supporting declarations, and supplemental

8    briefing.  [Docket Nos. 40, 41, 59, 60.]  Doe served the motion for default judgment and all

9    supporting declarations on Dinnis.  [Docket Nos. 69, 70.]

10          After Doe filed her motion for default judgment, the court ordered her to submit

11   supplemental briefing regarding the sufficiency of service of the summons and complaint and

12   whether Dinnis is subject to personal jurisdiction in this court.  [Docket Nos. 51, 57.]  Doe timely

13   filed the requested briefing, which she also served on Dinnis.  [Docket Nos. 53, 54, 59-62, 69, 70.]

14          The court held a hearing on November 14, 2019 at which Dinnis did not appear.  The court

15   ordered Doe to file an amended complaint with allegations regarding the citizenship of the parties

16   and amended administrative motions to seal that are narrowly tailored to seek sealing only of

17   sealable material in accordance with Civil Local Rule 79-5.  [Docket No. 72.]  Doe timely filed an

18   amended complaint that includes new citizenship allegations and removes the Airline Defendants

19   but adds no new claims for relief against Dinnis.  [Docket No. 76 (Am. Compl.).]  She also re-

20   filed on the public docket the submissions she previously sought to file under seal, including the

21   motion for default judgment.  The only material she seeks to redact from her motion and

22   supporting declarations is her name and the name of her daughter.  [Docket Nos. 74, 78.]

23          Additionally, in connection with her supplemental briefing regarding whether Dinnis is

24   subject to personal jurisdiction, Doe moved to file under seal portions of three documents

25   produced by Virgin and designated confidential pursuant to the protective order in the related case.

26   [Docket No. 59.]  Following the hearing on the motion for default judgment, Doe re-filed the three

27   documents on the public docket, seeking to redact only contact information and Dinnis's

28   _____

¹ The parties in the related case settled their claims and the court dismissed the case in December
2018.

United States District Court
Northern District of California

compensation information.  [Docket No. 74-6 (Andrus Decl., Dec. 4, 2019, "3d Andrus Decl.") Exs. F, H, I.]

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default.  *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001).  Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986))).

Before assessing the merits of a default judgment, a court must ensure the adequacy of service on the defendant, as well as confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties.  *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).  If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted).  In this analysis, "the well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)).  Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim.  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

### IV.    ANALYSIS

#### A.  Subject Matter Jurisdiction

Doe asserts the existence of diversity jurisdiction under 28 U.S.C. § 1332.  Federal courts have subject matter jurisdiction over a case when the parties are citizens of a state and citizens of a

1    foreign state and when the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(2).

2    Plaintiff resides in and is a citizen of Texas.  At the time Doe filed the original complaint in this

3    action, Dinnis was a citizen, resident, and domiciliary of Brisbane, Australia.  Am. Compl. ¶¶ 2, 3.

4    Plaintiff further alleges that the amount in controversy is greater than $75,000.  *Id.* at ¶ 4.

5    Therefore, since the parties are diverse and the amount in controversy exceeds the jurisdictional

6    minimum, this court has subject matter jurisdiction over this case.  *See In re Digimarc Corp.*

7    *Derivative Litig.*, 549 F.3d 1223, 1236 (9th Cir. 2008) ("It is well-established that the jurisdiction

8    of the court depends upon the state of things at the time of the action brought." (quotation and

9    citation omitted)).

10       **B.      Personal Jurisdiction**

11          The court next examines whether it has personal jurisdiction over Dinnis.  Courts

12   distinguish between "specific or case-linked jurisdiction and general or all-purpose jurisdiction."

13   *Delphix Corp. v. Embarcadero Techs., Inc.*, 749 Fed. Appx. 502, 505 (9th Cir. 2018) (quoting

14   *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017)).  Doe contends that Dinnis is subject to

15   this court's general personal jurisdiction.

16          "Unlike the specific jurisdiction analysis, which focuses on the cause of action, the

17   defendant and the forum, a general jurisdiction inquiry is dispute blind, the sole focus being on

18   whether there are continuous and systematic contacts between the defendant and the forum."

19   *Delphix*, 749 Fed. Appx. at 505.  "For an individual, the paradigm forum for the exercise of

20   general jurisdiction is the individual's domicile . . . ."  *Goodyear Dunlop Tires Operations, S.A. v.*

21   *Brown*, 564 U.S. 915, 924 (2011).  Domicile "is the place where one resides with the intent to

22   remain indefinitely."  Cal. Practice Guide: Federal Civil Procedure Before Trial, Ch. 3-D § 3:60

23   (2019) (emphasis removed).  In determining whether it has jurisdiction, a court "must examine the

24   defendant's contacts with the forum *at the time of the events underlying the dispute*."  *Delphix*,

25   749 Fed. Appx. at 505 (emphasis added) (quoting *Steel v. United States*, 813 F.2d 1545, 1549 (9th

26   Cir. 1987)) (discussing general jurisdiction analysis).  "[O]ne cannot defeat personal jurisdiction

27   by a move away from the state in which the underlying events took place."  *Id.* (quoting *Steel*, 813

28   F.2d at 1549).  "[A] general jurisdiction inquiry should consider all of a defendant's contacts with

*United States District Court*
*Northern District of California*

6

United States District Court
Northern District of California

1  the forum state prior to the filing of the lawsuit, rather than just those contacts that are related to

2  the particular cause of action the plaintiff asserts." *Id*. at 505-06.

3       Doe presents the following evidence of Dinnis's purported domicile in California at the

4  time of the events alleged in the complaint.  At the time of the assault, Dinnis was a resident of

5  California.  He lived in San Francisco with his family, used a San Francisco Bay Area mobile

6  number, and regularly posted on social media about his family's activities in the Bay Area.

7  [Docket No. 62 (Andrus Decl., July 12, 2019) ¶¶ 5-9, Exs. B-F.]

8       Dinnis was a Virgin employee at the time of the assault.  Virgin's principal place of

9  business is in Burlingame, California.  Am. Compl. ¶ 2; Andrus Decl. Ex. A.  In June 2016, while

10  Alaska Air Group, Inc. ("Alaska") was in the process of purchasing Virgin, Dinnis received an

11  offer letter regarding the continuation of his employment with Virgin upon its purchase by Alaska.

12  3d Andrus Decl. Ex. H.  The letter provided that Dinnis's position as a Virgin employee would

13  continue for 18 months after the date of Alaska's purchase of Virgin, and stated that this

14  employment period was subject to continuation without interruption "if [Alaska] opt[s] to move

15  you to the payroll of our subsidiary Alaska Airlines, Inc." *Id*.  The letter closed as follows:

16  "Stuart, I'm looking forward to you playing a key leadership role in the path forward for Virgin

17  America guests and teammates." *Id*.  The offer letter was accompanied by an employment

18  contract, which set forth the terms of Dinnis's continued employment as an at-will Virgin and

19  Alaska employee, and included a monthly bonus for an 18-month period.  It also identified the

20  laws of the state of California as governing any disputes.  *Id*.  Dinnis signed the employment

21  agreement and offer letter on July 12 and 13, 2016, respectively.  *Id*.

22       Following his alleged assault on Doe, on October 29, 2016, Dinnis sent an email to what

23  appears to be his supervisors at Virgin apologizing for his actions with respect to Doe and

24  proposing certain next steps.  He wrote, "I beg Virgin America to preserve my employment and

25  support my actions above and believe I still have a lot to contribute to the merged entity and am

26  more than willing to work hard and comply with all requirements to ensure this never happens

27  again." 3d Andrus Decl. Ex. I.

28       Based on this evidence, the court concludes that Doe has established that before and during

7

the time of the events alleged in the amended complaint, Dinnis was domiciled in California because he lived in this state with the intent to remain indefinitely. That Dinnis ultimately left California for Australia by the time Plaintiff filed her complaint does not defeat personal jurisdiction. Accordingly, Doe has established that this court has general personal jurisdiction over Dinnis for purposes of this action.

### C.    Adequacy of Service

Next, the court must determine whether service of the summons and complaint on Dinnis was properly effected. The proof of service indicates that Dinnis was personally served with a copy of the summons, complaint, and other documents on June 4, 2018 in Brisbane, Australia in the state of Queensland. [Docket No. 16 (Proof of Service).]

Under Federal Rule of Civil Procedure 4(f)(1), service of process upon an individual in a foreign country may be accomplished "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents." Fed. R. Civ. P. 4(f)(1). The Hague Convention "specifies certain approved methods of service and 'pre-empts inconsistent methods of service' wherever it applies." *Water Splash, Inc. v. Menon*, 137 S. Ct. 1504, 1507 (2017) (quoting *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988)). Both Australia and the United States are signatories to the Hague Convention. Hague Conf. on Private Int'l Law, *Authorities (Per Party)*, https://www.hcch.net/en/states/authorities (last visited Sept. 24, 2019). Because the United States and Australia are both Hague Convention member countries, "compliance with the Convention is mandatory." *Volkswagenwerk*, 486 U.S. at 705.

According to the Hague Convention, "[t]he Central Authority of the State [the request is] addressed [to] shall itself serve the document or shall arrange to have it served by an appropriate agency . . . by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed." Hague Convention (XIV) Service Abroad of Judicial and Extrajudicial Documents, art. 5(b), Nov. 15, 1965. In order for service to be compliant under the Hague Convention in Queensland, Australia, service is "effected by either a bailiff of the court or an enforcement officer." Hague Conf. on Private Int'l Law, *Methods of*

*Service*, https://www.hcch.net/en/states/authorities/details3/?aid=878 (last visited Sept. 24, 2019).

Furthermore, "personal service on an individual is effected by locating the person to be served and

identifying them, generally by asking their identity, and then giving them the documents to be

served." *Id.* Here, Doe requested that the Supreme Court of Queensland serve the complaint,

summons, and other papers on Dinnis in Brisbane. [Docket No. 54 (Andrus Decl., May 17, 2019)

¶ 3.] The Supreme Court of Queensland authorized the request and appointed a bailiff to

personally serve the documents. Bailiff Wayne Norman Reilly located Dinnis, confirmed his

identity, confirmed that he was the person named in the complaint, and personally served Dinnis

with complaint, summons, and other papers on June 4, 2018. Proof of Service.

      Service is proved under the Hague Convention once the Central Authority completes a

certificate stating that "the document has been served" and includes "the method, the place and the

date of service and the person to whom the document was delivered." Hague Convention (XIV)

Service Abroad of Judicial and Extrajudicial Documents, art. 6, Nov. 15, 1965. Having reviewed

the proof of service, the court finds that service of the summons and complaint on Dinnis was

adequately effected under Rule 4(f)(1).[2]

### D.      Application of the *Eitel* Factors

#### 1.      Possibility of Prejudice to Plaintiff

      The first *Eitel* factor asks whether the plaintiff will suffer prejudice if default judgment is

not entered. This factor weighs in favor of granting Doe's motion, as Doe will suffer prejudice if

the court does not enter a default judgment against Dinnis because she otherwise has no means to

recover damages from him. *PepsiCo*, 238 F. Supp. 2d at 1177.

#### 2.      Merits and Sufficiency of the Complaint

      "Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of

the complaint are often analyzed together." *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d

---

[2] As noted, Doe filed an amended complaint on December 5, 2019 that adds no new claims against
Dinnis. Federal Rule of Civil Procedure 5(a)(2) provides that a defendant who is in default need
not be served with an amended complaint that asserts no new claims for relief. Notwithstanding
Rule 5(a)(2), Doe caused the amended complaint to be personally served on Dinnis on December
6, 2019. [Docket No. 79 (Proof of Service of Am. Compl.).]

United States District Court
Northern District of California

1  1038, 1048 (N.D. Cal. 2010).  "These two factors require that plaintiffs' allegations 'state a claim

2  on which the [plaintiff] may recover.'"  *Id.* (quoting *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th

3  Cir. 1978)).  Following entry of default, well-pleaded allegations in the complaint are deemed true,

4  except for the amount of damages.  *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir.

5  2002).

6      Doe moves for default judgment only on her claims of intentional infliction of emotional

7  distress, negligent infliction of emotional distress, assault, and battery.  *See* Mot. 5-6.

8      ### a.      Intentional Infliction of Emotional Distress

9      In order to establish a claim for intentional infliction of emotional distress, Doe must show

10  "(1) extreme and outrageous conduct by [Dinnis] with the intention of causing, or reckless

11  disregard of the probability of causing, emotional distress"; (2) that she "suffer[ed] severe or

12  extreme emotional distress; and (3) actual and proximate causation of the emotional distress by

13  [Dinnis's] outrageous conduct."  *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (citations and quotation

14  marks omitted).  "A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all

15  bounds of that usually tolerated in a civilized community."  *Id.* at 1051 (citations and quotation

16  marks omitted).

17      Doe has sufficiently alleged a claim for intentional infliction of emotional distress.  She

18  alleges conduct by Dinnis, a sexual assault, that was extreme and outrageous, and is the type of

19  conduct that "exceeds all bounds of that usually tolerated in a civilized community."  Dinnis acted

20  with intent or recklessness, knowing that Doe was likely to suffer emotional distress, and with

21  deliberate disregard of this likelihood.  *See* Am. Compl. ¶¶ 51-53.  Further, Doe has alleged that

22  she suffered severe emotional distress as a result of Dinnis's assault.  *See id.* at ¶ 54.  She states

23  that following the sexual assault, she experienced "extreme anxiety when riding on elevators and

24  now take[s] the stairs in most situations rather than take an elevator alone."  [Docket No. 74-1

25  (Doe Decl., Feb. 27, 2019) ¶ 5.]  Since the assault, she has experienced multiple panic attacks and

26  anxiety about the prospect of her daughters facing similar assaults.  *Id.* at ¶ 6.  Due to her anxiety,

27  she was unable to perform the frequent travel that her Research Now position required, and

28  resigned.  *Id.* at ¶ 9.  She sought mental health treatment through counselling and an employee

United States District Court
Northern District of California

1   assistance line, and has been prescribed an increase in anti-depressant medication.  *Id*. at ¶ 7.

2   Psychologist Benjamin J. Albritton, Psy.D., examined Doe and opined that her present

3   impairments are consistent with a diagnosis of Posttraumatic Stress Disorder ("PTSD").  [Docket

4   No. 74-4 (Albritton Decl., Feb. 22, 2019) ¶ 16.]  Given the allegations and the evidence submitted

5   with her motion, the court concludes that Doe has stated a sufficient claim for intentional infliction

6   of emotional distress.

7                    **b.       Negligent Infliction of Emotional Distress**

8               The California Supreme Court has "recognized that there is no independent tort of

9   negligent infliction of emotional distress."  *Potter v. Firestone Tire & Rubber Co*., 6 Cal. 4th 965,

10  984 (1993).  Instead, "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is

11  an essential element."  *Id*.  "That duty may be imposed by law, be assumed by the defendant, or

12  exist by virtue of a special relationship."  *Id*. at 985.  "Whether a defendant owes a duty of care is

13  a question of law.  Its existence depends upon the foreseeability of the risk and upon a weighing of

14  policy considerations for and against imposition of liability."  *Marlene F. v. Affiliated Psychiatric*

15  *Medical Clinic, Inc*., 48 Cal. 3d 583, 588 (1989).  Therefore, to prevail on her negligence claim,

16  Doe must establish that 1) Dinnis owed her a duty; 2) Dinnis breached that duty; 3) Dinnis's

17  conduct caused Doe's emotional distress, and 4) Doe suffered damages from Dinnis's conduct.

18  *See Bohnert v. Roman Catholic Archbishop of San Francisco*, 136 F. Supp. 3d 1094, 1124 (N.D.

19  Cal. 2015).

20              While Doe has sufficiently alleged that Dinnis's conduct caused her emotional distress, she

21  she does not allege that Dinnis owed her a duty of care or that he breached that duty.  Doe does not

22  address these elements of the claim in her motion, discussing only whether Doe's emotional

23  distress was reasonably foreseeable to Dinnis.  However, there is no claim for negligent infliction

24  of emotional distress "based solely upon the foreseeability that serious emotional distress might

25  result."  *Marlene F*., 48 Cal. 3d at 589.  "Damages for severe emotional distress, rather, are

26  recoverable in a negligence action when they result from the breach of a duty owed the plaintiff

27  that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out

28  of a relationship between the two."  *Id*. at 590.  Accordingly, the court concludes that Doe has not

United States District Court
Northern District of California

11

stated a negligent infliction of emotional distress claim.

### c.      Assault

The elements of a claim for assault under California law are that "(1) the defendant threatened to touch the plaintiff in a harmful or offensive manner; (2) it reasonably appeared to the plaintiff that the defendant was about to carry out the threat; (3) the plaintiff did not consent to the defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's conduct was a substantial factor in causing the plaintiff's harm." *Avina v. United States*, 681 F.3d 1127, 1130 (9th Cir. 2012) (citations omitted).

Doe has alleged a sufficient claim for assault. She alleges that Dinnis threatened to touch her in a harmful or offensive manner, causing her to fear that he was about to touch her in such a way. Am. Compl. ¶¶ 17-21, 23-24, 65-69. She also alleges that she did not consent to the conduct, repeatedly saying "no" to Dinnis. *Id*. at ¶¶ 21, 23, 27. Doe was harmed by the apprehension created by Dinnis's conduct and his conduct was a substantial factor in causing her harm. *Id*. at ¶ 69.

### d.      Battery

A claim for battery under California law requires a plaintiff to establish that "(1) the defendant touched the plaintiff or caused the plaintiff to be touched with the intent to harm or offend the plaintiff; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's situation would have been offended by the touching." *Avina*, 681 F.3d at 1130-31.

Doe has stated a claim for battery. She alleges that Dinnis touched her in an offensive manner, that she did not consent to his actions, that she was harmed and offended by the touching, and that a reasonable person in her situation would have been offended by the touching. Am. Compl. ¶¶ 73-76.

### 3.      The Sum of Money at Stake in the Action

The fourth *Eitel* factor focuses on the amount of money at issue in the action. "[C]ourts should be hesitant to enter default judgment in matters involving large sums of money." *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1099-1100 (N.D. Cal. 2014). "When the money at stake in the

litigation is substantial or unreasonable, default judgment is discouraged." *Bd. of Tr. v. Core Concrete Const., Inc.*, No. C-11-02532-LB, 2012 WL 380304, at *1, *4 (N.D. Cal. Jan. 7, 2012). However, when "the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate." *Id.* The total amount of damages Doe requests is $1,310,537.45, representing sums for emotional distress damages and damages for loss of past and future income. This sum appears to be "tailored to the specific misconduct" of Dinnis. This factor weighs in favor of granting Doe's motion.

### 4. Possibility of Dispute Concerning Material Facts

Under the fifth *Eitel* factor, the court assesses the likelihood of dispute between the parties regarding the material facts of the case. When a party "fail[s] to appear or otherwise respond . . . in defaulting, defendants are deemed to have admitted all well-pleaded factual allegations contained in the complain[t]." *DirecTV v. Hoa Huynh*, 503 F.3d 847, 851 (9th Cir. 2007) (citing Fed. R. Civ. P. 55(a)). Here, Dinnis failed to appear and respond to the complaint and the Clerk entered default accordingly. Because Doe's well-pled allegations, except as to damages, are presumed to be true, *TeleVideo*, 826 F.2d at 917-18, she adequately alleged her claims for intentional infliction of emotional distress, assault, and battery, as set forth above. Doe served Dinnis with her motion for default judgment as well as all supplemental briefing and the amended complaint. [Dockets No. 52, 56, 58, 69, 70, 79.] Nevertheless, Dinnis did not appear or file any opposition to Doe's motion. Accordingly, the record reflects Dinnis's silence despite notice of the proceedings and several opportunities to respond. Therefore, the court finds that there is little possibility of a dispute of material facts.

### 5. Default Due to Excusable Neglect

The sixth *Eitel* factor considers whether a defendant's default resulted from excusable neglect. *Eitel*, 782 F.2d at 1472. Nothing in the record suggests that Dinnis defaulted due to excusable neglect. As noted earlier, Doe served Dinnis with submissions relating to the case throughout the pendency of this action and he still failed to participate in the litigation. The default of Dinnis cannot be attributed to excusable neglect, so the sixth factor weighs in favor of Doe.

### 6.     Favoring a Decision on the Merits

The final *Eitel* factor examines whether the policy of favoring a decision on the merits precludes entry of default judgment.  *Eitel*, 782 F.2d at 1472 ("[c]ases should be decided on their merits whenever reasonably possible").  However, "the mere existence of Fed.R.Civ.P. 55(b) indicates that this preference, standing alone, is not dispositive."  *PepsiCo*, 238 F. Supp. 2d at 1177 (citation omitted).  Because Dinnis failed to defend against this action, a decision on the merits would be "impracticable, if not impossible."  *Truong*, 2007 WL 1545173, at *13 (citation omitted).  Therefore, the court finds this factor, though it weighs against default judgment, does not preclude granting it.  *See Kloepping v. Fireman's Fund*, No. C 94-2684 TEH, 1996 WL 75314, at *3 (N.D. Cal. Feb. 13, 1996).

In sum, the *Eitel* factors weigh in favor of granting Plaintiff's motion for default judgment.

### E.     Remedies

Although the factual contentions of the operative complaint are accepted as true when determining the liability of a defaulting defendant, this rule does not apply to statements regarding damages.  *See TeleVideo*, 826 F.2d at 917-18.  To recover damages after securing a default judgment, a plaintiff must prove the relief it seeks through testimony or written affidavit.  *Bd. of Trs. of the Boilermaker Vacation Trust v. Skelly, Inc.*, 389 F. Supp. 2d 1222, 1226 (N.D. Cal. 2005); *see PepsiCo, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc.*, 826 F.2d at 917-18).

Here, Plaintiff seeks monetary damages of $1,310,537.45, representing $500,000 in non-economic damages and $810,537.45 for lost income.  Mot. 11-13.

### 1.   Non-Economic Damages

Doe seeks $500,000 in damages for emotional distress, humiliation, embarrassment, and anguish caused by Dinnis's assault.  "There is no fixed or absolute standard by which to compute the monetary value of emotional distress, and a jury is entrusted with vast discretion in determining the amount of damages to be awarded."  *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1602 (2012) (quotations and citation omitted).  Under California law, "the testimony of a single person, *including the plaintiff*, may be sufficient to support an award of emotional distress damages."  *Knutson v. Foster*, 25 Cal. App. 5th 1075, 1096 (2018) (emphasis in original).

United States District Court
Northern District of California

As described above, Doe alleges a lengthy, frightening assault by Dinnis that took place on an elevator, in a hotel hallway, and in front of her hotel room. He grabbed her by her neck and attempted to follow her inside her room until he finally walked away after she fought him off and yelled. She states that after the assault, she experienced "extreme anxiety when riding on elevators and now take[s] the stairs in most situations rather than take an elevator alone." Doe Decl. ¶ 5. She has experienced multiple panic attacks and anxiety about the prospect of her daughters facing similar assaults. *Id*. at ¶ 6. Doe also experiences recurring nightmares and flashbacks to the assault. [Docket No. 74-3 (Laprairie Decl., Feb. 28, 2019) Ex. D (Doe Dep.) 171-73.] Doe's daughter has witnessed Doe unable to move from anxiety on several occasions. [Docket No. 74-2 (Declaration of Doe's Daughter's Decl., Nov. 12, 2018) 1-2.] Her anxiety related to travel resulted in her resigning from her position. Doe Decl. ¶ 9. Doe sought mental health treatment through counselling and an employee assistance line and has been prescribed an increase in anti-depressant medication. Doe Decl. ¶ 7. A psychologist diagnosed her with PTSD resulting from the assault and opined that she would benefit from individual therapy to address the symptoms that affect her day-to-day life as a result of the assault. Albritton Decl. ¶¶ 16-17.

The court finds that an award of $500,000 for non-economic damages is appropriate given the assault alleged and the evidence of the emotional distress Doe suffered as a result. This amount appears reasonable compared to amounts juries have awarded to plaintiffs who have suffered sexual assaults. *See, e.g., Boswell v. Federal Express Corp*., No. 3:04-cv-00098-SI, 2007 WL 1412590 (N.D. Cal. Apr. 11, 2007) (jury awarded plaintiff $3,000,000, including $250,000 for emotional distress, where manager forcibly kissed employee and then retaliated against her, causing her to resign); *Coughlin v. Hilton Hotel Corp*., 1994 WL 900364 (D. Nev. Oct. 1, 1994) (jury awarded plaintiff $1,700,000 against hotel defendant following sexual assault during convention at the hotel). *See also Ramser v. Laielli*, 15-CV-2018-CAB-DHB, 2017 WL 4169721, at *2 (S.D. Cal. Sept. 20, 2017) (plaintiff alleging rape and related claims awarded $1.5 million for non-economic damages on motion for default judgment). The court recommends that Doe be awarded $500,000 for non-economic damages.

### 2.        Economic Damages

Doe also requests $810,537.45 in back and front pay.  At the time of the assault, Doe was employed as a Vice President, Panel Partnerships for Research Now.  Doe Decl. ¶ 2.  In that position, she earned a salary of $150,000 and was eligible to receive an additional 20% of her salary as a bonus.  *Id.* at ¶ 8, Ex. A (Research Now offer letter).  After the assault, Doe was unable to perform the frequent travel that was required of the position.  She resigned from the position in January 2017.  *Id.* at ¶¶ 4-9; Doe Dep. 100-103.  Doe returned to work for her previous employer, American Airlines, at a salary of $80,267.  Doe Decl. ¶ 10, Ex. B (paystub).  She earned a one-time bonus of $1,000 in 2017.  Doe Decl. ¶ 10.  In September 2018, she was promoted to Manager, Loyalty Partnerships, with an annual salary of $97,721.15.  *Id.* at ¶ 11, Ex. C.  Doe is 44 years old and intends to work until age 65.  Doe Decl. ¶ 13.

Doe calculates the gap between the compensation she expected to receive had she continued in her position at Research Now and her actual compensation through February 28, 2019 at $122,025.  Doe Decl. ¶ 12; Laprairie Decl. ¶ 3 Ex. A.  According to Doe, the harm from no longer being able to work as a vice president at Research Now will continue into the foreseeable future, as even with her recent promotion her diminished earnings represent significant front pay damages.  She expected to have a diminished lifetime earning capacity of at least $688,512.45, after discounting to present value.  Laprairie Decl. ¶¶ 4-6, Ex. B.

As noted above, Doe settled her claims against the Airline Defendants and in December 2018, the court dismissed the related case, *Doe v. Virgin America, Inc*., Case No. C-18-cv-2420 DMR.  At the hearing on the motion, the court ordered Doe to submit briefing addressing whether her claim for front and back pay in this motion accounts for any recovery from the Airline Defendants for the same damages.  [Docket No. 72.]  In response, Doe submitted a declaration in which she states, "I have not received or recovered any money for the lost/reduced income I am seeking in this matter."  [Docket No. 78 (Doe Decl., Dec. 3, 2019) ¶ 2.]

Having reviewed the evidence, the court recommends an award of $810,537.45 for back and front pay.

V.    **CONCLUSION**

    For the foregoing reasons, the court recommends that Doe's motion for default judgment be granted.  The court further recommends that Doe be awarded $500,000 for non-economic damages and $810,537.45 for back and front pay, for a total of $1,310,537.45.

    Immediately upon receipt of this order, Doe shall serve a copy of this order on Dinnis and file proof of service with the court.  Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.


    **IT IS SO ORDERED.**

Dated: February 24, 2020



Donna M. Ryu
United States Magistrate Judge